**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| KELLY STANKIEWICZ, MD, FAAD | |
| Plaintiff, | Case No. 18-3823 |
| | Hon. John Z. Lee |
| v. | |
| DU PAGE MEDICAL GROUP, LTD., d/b/a DUPAGE MEDICAL GROUP, an Illinois corporation, | |
| Defendant. | |

**DEFENDANT DU PAGE MEDICAL GROUP, LTD.'S REPLY MEMORANDUM IN
SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Steven S. Scholes (# 6191220)
Peter B. Allport (# 6295762)
Sean Koller (# 6324181)
MCDERMOTT WILL & EMERY LLP
444 W. Lake Street
Suite 4000
Chicago Illinois  60606
Tel: (312) 372-2000
Fax: (312) 984-7700
sscholes@mwe.com
pallport@mwe.com
sekoller@mwe.com

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................1

ARGUMENT ..............................................................................................................1

I.      Stankiewicz Did Not Have the Right to Dissent to the Transaction....................................1

        A.      DMG Never Agreed to Extend Stankiewicz's Resignation Date ...........................2

                1.      There Is No Evidence of an Agreement......................................................2

                2.      No One With Authority to Bind DMG Agreed to Extend Stankiewicz's Resignation Date ...........................................................4

                        a.      Stankiewicz Fails to Demonstrate that DMG Consented to or Knowingly Acquiesced in an Alleged Agent's Authority................................................5

                        b.      Stankiewicz Could Not Reasonably Conclude that Ruggio, Bhatia, McGuire, or Hopkins Served as an Agent...............................................................7

                        c.      Stankiewicz Fails to Demonstrate that She Acted Diligently. ...........................................................9

                        d.      Stankiewicz Cannot Establish Detrimental Reliance....................10

                3.      DMG Never Ratified the Purported Agreement ........................................11

                  4.      The Statute of Frauds Bars Any Oral Agreement.....................................12

        B.      DMG Possessed the Ability to Redeem Stankiewicz's Shares Any Time After Stankiewicz Tendered Her Notice of Resignation.............................14

II.     The Doctrine of Unclean Hands Bars Stankiewicz's Claim.............................................14

CONCLUSION...........................................................................................................15

i

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Amcore Bank, N.A. v. Hahnaman-Albrecht, Inc.*,
   326 Ill. App. 3d 126 (2d Dist. 2001) ................................................................5, 11

*America's MoneyLine, Inc. v. Coleman*,
   360 F.3d 782 (7th Cir. 2004) ................................................................15

*Briggs v. DiMatio*,
   1991 WL 140633 (N.D. Ill. Feb. 1, 1991) ................................................13

*Capital Dist. Physician's Health Plan v. O'Higgins*,
   951 F. Supp. 352 (N.D.N.Y. 1997) ..........................................................12

*Chase v. Consol. Foods Corp.*,
   744 F.2d 566 (7th Cir. 1984) ................................................................6, 8

*Chessie Logistics Co. v. Krinos Holdings, Inc.*,
   867 F.3d 852 (7th Cir. 2017) ................................................................5

*Classic Fire & Marine Ins. Co v. Ill. Ins. Exch.*,
   No. 97 C 1256, 1997 WL 767290 (N.D. Ill. Dec. 3, 1997) ....................10

*Cove Mgmt. v. AFLAC, Inc.*,
   2013 IL App (1st) 120884 ......................................................... *passim*

*Czerska v. United Airlines, Inc.*,
   292 F. Supp. 2d 1102 (N.D. Ill. 2003) ...................................................13

*Duckett v. Williams*,
   86 F. Supp. 3d 268 (S.D.N.Y. 2015) ......................................................11

*Landmark Am Ins. Co. v. Deerfield*,
   2018 WL 2072858 (N.D. Ill. May 3, 2018) ......................................5, 6, 10

*Loncarevic & Assocs. v. Stanley Foam Corp.*,
   2017 IL App (1st) 150690 ....................................................................9

*Lundberg v. Church Farm, Inc.*,
   151 Ill. App. 3d 452 (2d Dist. 1986) .......................................................9

*Orix Credit All. v. Taylor Mach. Works*,
   125 F.3d 468 (7th Cir. 1997) ................................................................6

*Packers Trading Co. v. CFTC*,
  972 F.2d 144 (7th Cir. 1992) .................................................................................15

*Siena at Old Orchard Condo. Ass'n v. Siena at Old Orchard, LLC*,
  2017 IL App (1st) 151846.................................................................................8, 9

*Sinclair v. Sullivan Chevrolet Co.*,
  45 Ill. App. 2d 10 (3d Dist. 1964).........................................................................13

*Sphere Drake Ins. Ltd. v. Am. Gen. Life Ins. Co.*,
  376 F.3d 664 (7th Cir. 2004) .......................................................................5, 8, 12

*State Bank of Geneva v. Sorenson*,
  167 Ill. App. 3d 674 (2d Dist. 1988).....................................................................14

*Toney v. Quality Res., Inc.*,
  75 F. Supp. 3d 727 (N.D. Ill. 2014) ..................................................................6, 11

**Statutes**

Ill. Comp. Stat. 80/1 ..............................................................................................12

## INTRODUCTION

The Motion for Summary Judgment filed by Defendant Du Page Medical Group, Ltd. ("DMG") demonstrated that Plaintiff Kelly Stankiewicz did not possess the statutory right to dissent to DMG's sale of its equity interest in DMG Practice Management Solutions (the "Transaction"), under the Illinois Business Corporations Act (the "IBCA"), because Stankiewicz did not own any shares in DMG when the Transaction closed. In particular, DMG established that Stankiewicz never entered into a valid, enforceable agreement with DMG to extend Stankiewicz's resignation date beyond July 31, 2017. As a result, DMG redeemed Stankiewicz's shares, pursuant to the terms of the Amended and Restated Shareholder Agreement (the "Shareholder Agreement"), when Stankiewicz's employment with DMG ended on July 31, 2017.

In response, Stankiewicz concedes that no one with actual authority ever agreed to extend her employment. Instead, she claims that DMG should be required to pay her millions of dollars because four non-management employees possessed "apparent authority" to enter into an oral contract to extend Stankiewicz's employment. Stankiewicz is wrong. She has not set forth evidence sufficient to show the existence of an oral agreement. And, even if she did, Stankiewicz cannot demonstrate the existence of apparent authority because DMG never consented to these individuals' authority, she knew that they did not possess authority, she failed to inquire into the scope of their authority, and she did not rely on their authority to her detriment. The Court should enter summary judgment in DMG's favor.

## ARGUMENT

### I.      Stankiewicz Did Not Have the Right to Dissent to the Transaction.

DMG established that Stankiewicz voluntarily tendered her notice of resignation to DMG on May 1, 2017, with an effective date of July 31, 2017. *See* Docket Entry ("D.E.") 69, DMG's Local Rule 56.1 Statement of Undisputed Facts ("SOF"), ¶ 31; D.E. 74, Stankiewicz's Response

to DMG's Statement of Facts ("PRSOF"), ¶ 31.  DMG had no obligation to allow Stankiewicz to extend her resignation date once she tendered notice of her resignation (D.E. 68, DMG's Opening Brief, pp. 12-13 (collecting cases)), and DMG never agreed to extend her resignation date.  SOF ¶¶ 56-63.  Thus, Stankiewicz has no right to dissent to the Transaction because her employment ended on July 31, 2017, DMG redeemed her shares, and she was not a shareholder when the Transaction closed.  *Id.,* ¶¶ 62-66.  In response, Stankiewicz argues only that there is an issue of fact as to whether DMG agreed to extend her employment.  There is not.

### A.    DMG Never Agreed to Extend Stankiewicz's Resignation Date.

#### 1.    There Is No Evidence of an Agreement.

Stankiewicz cannot establish that DMG accepted an offer to extend her resignation date.  Only DMG's Board of Directors and CEO possessed authority to enter into an agreement with Stankiewicz.  *See* SOF ¶¶ 6, 8, 10-12, 56-59, 62-63.  They never did.  *Id.,* ¶¶56-63.  The overwhelming evidence establishing that DMG never entered into an agreement with Stankiewicz to extend her resignation date includes Stankiewicz's own dispositive statements.  In particular, Stankiewicz disclosed to her colleague, Jeffrey Hsu, she had sought to conceal her attempt to extend her resignation date from DMG's decision-makers.  SOF ¶ 60, Ex. 1-J ("Just heard from the 'c-suite' that I'm not allowed to change my end date.  Hahaha.  As expected . . . And [my lawyer] said the timing would be this exactly.  *When they would catch on.*").  She confided to her husband that DMG never agreed to extend her resignation date.  SOF ¶ 61, Ex. 1-K.[1]  And, she admitted unequivocally that DMG did not terminate her involuntarily.  SOF ¶ 63,

---

[1] Stankiewicz attempts to explain her critical admissions by asserting that DMG retaliated against her for dissenting.  This is not true.  DMG's C-Suite stated the extension was not "doable" on July 25, 2017, two days before she attempted to dissent.  SOF ¶ 56.  Indeed, her position is inconsistent with her own contemporaneous statements to her husband.  SOF ¶ 61, Ex. 1-K.

Ex. 1-A, p. 250:10-18 ("Q. Okay.  *And DMG did not fire you, correct?  A. Correct*.") (emphasis added).[2]

While Stankiewicz cannot evade her fatal admissions, she does not even attempt to.  Her entire response focuses on whether certain individuals possessed apparent authority to "communicate DMG's acceptance of the contract extension."  D.E. 75, pp. 11-18.  However, she fails to set forth evidence of an actual agreement.  Her response to DMG's Rule 56.1 Statement illustrates the lack of evidence of an agreement.  Statement of Facts Nos. 58 and 63 state that "DMG declined to extend Stankiewicz's resignation date" and "DMG did not terminate Dr. Stankiewicz."  SOF, ¶¶ 58, 63.  Stankiewicz's response demonstrates only that Stankiewicz conveyed to certain employees that she intended to stay at DMG and those individuals took certain administrative steps on the mistaken belief that Stankiewicz had obtained DMG's permission.  She fails to demonstrate the existence of an agreement with DMG.

Stankiewicz relies on the deposition testimony of Dr. Ashish Bhatia, Susan Ruggio, Dr. Jeffrey Hsu, Tunisia Hopkins, Claudia Sagredo, Paul Merrick, and Michael Pacetti.  *See* PRSOF ¶¶ 58, 63.  However, none of those witnesses testified to the existence of an actual agreement between DMG and Stankiewicz regarding the extension of Stankiewicz's employment.  Both DMG's President, Merrick, and DMG's CEO, Pacetti, denied that DMG had ever accepted Stankiewicz's offer to extend her resignation date.  *See* D.E. 74, Ex. A-5, pp. 108:1-109:16, Ex. A-6, p. 125:2-12.  The other witnesses testified that they did not have actual knowledge of the existence of an agreement.[3]  Rather, some of them took certain administrative actions, such as extending Stankiewicz's credentialing, based on Stankiewicz's statements and the mistaken

---

[2] Stankiewicz's colleagues also confirmed that DMG did not terminate her involuntarily.  *See* SOF ¶ 63, Ex. 1-F, p. 110:22-23; Ex. 1-H, p. 218:4-16.

[3] D.E. 74, Ex. A-9, p. 39:6-39:18; Ex. A-1, pp. 115:22-116:19; Ex. A-8, pp. 73:11-77:1, 79:15-81:22, 90:17-91:15; Ex. A-3, pp. 61:10-61:16; Ex. A-4, pp. 97:14-98:16.

belief that Stankiewicz had received permission from DMG to extend her resignation date. *See id.,* Ex. A-8, p. 74:7-11; Ex. A-9, pp. 62:12-63:23, 65:6-66:7.

The emails that Stankiewicz cites only evidence that: (a) Stankiewicz told Ruggio she intended to stay (*e.g., id.,* Ex. B-14); and (b) certain personnel took administrative steps based on Stankiewicz's representation. *Id.,* Ex. B-8; C-8. They do not demonstrate the existence of an agreement by DMG. In fact, Stankiewicz's declaration effectively concedes that Stankiewicz never reached an agreement with DMG. While she declares that "I believed that Dr. Bhatia and Ruggio received the necessary approval from those with authority at DMG and in the C-Suite to extend my departure date" (*id.,* Ex. C, ¶ 28), she fails to submit evidence that anyone with authority gave Bhatia or Ruggio the necessary approval. Stankiewicz has failed to offer sufficient evidence that DMG ever agreed to extend her resignation date. Her claim should fail.

### 2. No One With Authority to Bind DMG Agreed to Extend Stankiewicz's Resignation Date.

DMG also established that the individuals who took the administrative steps did not have authority to bind DMG. SOF ¶¶ 8-11, 27, 32, 47-48, 51-55. In response, Stankiewicz suggests that Ruggio, Sharon McGuire, Hopkins, and Bhatia,[4] "possessed apparent authority to communicate DMG's acceptance of the contract extension." D.E. 75, pp. 12-13. Stankiewicz is incorrect.[5]

---

[4] Bhatia served as the physician site leader for the CityGate office. Ruggio served as a practice manager. McGuire served as a credentialing specialist. Hopkins served as a human resources manager. None of them had actual authority to make decisions with respect to the employment of a physician at DMG. SOF ¶¶ 27, 32, 52, 53. While Stankiewicz claims that Hopkins provided support on questions of physician terminations, there is no support in the record for this assertion. Rather, Hopkins was responsible for human resources issues with respect to non-physicians. D.E. 74, Ex. A-3, p. 26:5-7; Ex. A-8, p. 79:1-14.

[5] The Complaint alleges that Stankiewicz entered into an agreement with Ruggio, McGuire, or Claudia Sagredo to extend her employment. D.E. 1, ¶ 60. At her deposition, Stankiewcz claimed she entered into an agreement with Ruggio. D.E. 69, Ex. 1-A, p. 143:9-21. Now she claims that Ruggio, McGuire, Hopkins, and Bhatia possessed the apparent authority to enter into the agreement. The Court should prohibit Stankiewicz from claiming that Bhatia and/or Hopkins possessed such authority because she

The plaintiff bears the burden of establishing the existence of apparent authority. *See Sphere Drake Ins. Ltd. v. Am. Gen. Life Ins. Co.,* 376 F.3d 664, 672 (7th Cir. 2004). To do so, the plaintiff must satisfy a three-part test. First, the plaintiff must show that the principal consented to or knowingly acquiesced in the agent's exercise of authority. Second, the plaintiff must establish that based on the actions of the principal and agent, the plaintiff reasonably concluded that the third party was an agent of the principal. Finally, the plaintiff must demonstrate that she justifiably and detrimentally relied on the agent's apparent authority. *Id.* at 673. A plaintiff cannot establish apparent authority if the plaintiff acts negligently. Rather, she "must use reasonable diligence and prudence to ascertain whether the agent is acting and dealing with [her] within the scope of his powers." *Cove Mgmt. v. AFLAC, Inc.,* 2013 IL App (1st) 120884, ¶ 27, 986 N.E.2d 1206, 1214. Stankiewicz cannot satisfy any of these elements.

        *a.*     *Stankiewicz Fails to Demonstrate that DMG Consented to or Knowingly Acquiesced in an Alleged Agent's Authority.*

To demonstrate that DMG consented to or knowingly acquiesced in McGuire, Hopkins, Ruggio, or Bhatia possessing the authority to act on behalf of DMG to extend a physician's resignation date, Stankiewicz must identify evidence of the words or conduct of the alleged principal, *i.e.,* DMG, and not the alleged agent, to establish the agent's authority. *See Amcore Bank, N.A. v. Hahnaman-Albrecht, Inc.,* 326 Ill. App. 3d 126, 137-38, 759 N.E.2d 174, 183-84 (2d Dist. 2001); *Landmark Am. Ins. Co. v. Deerfield*, 2018 WL 2072858, *8 (N.D. Ill. May 3, 2018). She fails to do so. She has not identified any statements made by a member of DMG's Board of Directors, C-Suite, or any officer that McGuire, Hopkins, Ruggio, or Bhatia possessed the authority to extend her resignation date. Stankiewicz has also failed to provide evidence of

---

never alleged that factual theory in her Complaint. *See Chessie Logistics Co. v. Krinos Holdings, Inc.,* 867 F.3d 852, 860 (7th Cir. 2017). Stankiewicz has abandoned any arguments with respect to Sagredo.

any other instances in which DMG allowed McGuire, Hopkins, Ruggio, or Bhatia to extend the employment of a physician.

In fact, the only evidence Stankiewicz cites in support of her assertion that DMG consented to or acquiesced in the authority of McGuire and Hopkins is a single email thread between Ruggio, McGuire, and Hopkins.  *See* D.E. 74, PRSOF ¶¶ 52-53, Ex. B-8.  This email does not create the appearance of authority.  It does not contain any statements made by DMG, it only contains statements made by the alleged agents.  *See Cove,* 2013 IL App (1st) 120884, at ¶ 27; *Landmark,* 2018 WL 2072858, at *8; *Toney v. Quality Res., Inc.,* 75 F. Supp. 3d 727, 744 (N.D. Ill. 2014).  It does not discuss the scope of the alleged authority of either Hopkins or McGuire.  Finally, this email could not have caused Stankiewicz to believe McGuire or Hopkins possessed authority because Stankiewicz is not a party to the email and there is no evidence that Ruggio shared its contents with Stankiewicz.

The evidence that Stankiewicz claims demonstrates that DMG consented to the authority of Bhatia or Ruggio is also deficient.  *See* D.E. 74, Additional Statement of Fact ("ASOF"), ¶¶ 7, 8.  Each witness she relies on testified that either DMG's Board of Directors or C-Suite possessed the authority to make decisions with respect to physician employment.  *See id.,* Ex. A-1, p. 118:4-8; Ex. A-5, pp. 76:7-77:10; Ex. A-6, p. 51:13-16.  Indeed, when Stankiewicz asked Pacetti, "who within DMG had approval rights with respect to physician hiring and firing decisions," he responded "[t]he board of DMG."  *Id.,* Ex. A-6, p. 51:13-16.[6]

Stankiewicz's only remaining argument is that DMG cloaked Ruggio and Bhatia in apparent authority by accepting Bhatia's email forward of Stankiewicz's notice of resignation.

---

[6] Ruggio's putative authority to make "equipment purchases" does not mean that Ruggio possessed apparent authority to make employment decisions.  *See Chase v. Consol. Foods Corp.,* 744 F.2d 566, 569 (7th Cir. 1984); *Orix Credit All. v. Taylor Mach. Works,* 125 F.3d 468, 474-75 (7th Cir. 1997).

Not so.  First, Bhatia's email forward cannot create apparent authority for Ruggio because it does

involve her.  Second, Stankiewicz admitted that she knew that she needed to submit her

resignation to DMG's C-Suite.  *See* SOF ¶ 29.  Ruggio directed her to send it to Kasper and

Merrick.  SOF ¶ 30.  And, Stankiewicz admitted that she understood that Bhatia would forward

the notice of resignation to the C-Suite.  SOF ¶¶ 31-32.  In fact, Stankiewicz states in the email

that she is announcing her departure to "DMG headquarters."  SOF ¶ 31, Ex. 2-E.  Thus,

Stankiewicz cannot establish that DMG consented to or acquiesced in the authority of these

alleged agents.

> **b.** *Stankiewicz Could Not Reasonably Conclude that Ruggio, Bhatia, McGuire, or Hopkins Served as an Agent.*

Stankiewicz has also failed to set forth evidence sufficient to demonstrate that she could

reasonably conclude that Ruggio, Bhatia, McGuire, or Hopkins served as an alleged agent for

DMG.  First, DMG informed Stankiewicz directly that only DMG's Board of Directors,

President, and CEO possessed authority to make decisions with respect to Stankiewicz's

employment.  SOF ¶¶ 12-17.  Specifically, Stankiewicz's Employment Agreement governed the

terms and conditions of Stankiewicz's employment, including any issues involving resignation or

termination.  SOF ¶ 14.  DMG's Physician Handbook also directed physicians to consult their

Employment Agreement for issues involving resignation or termination.  *Id.,* Ex. 2-B, p. 26

(DMG-Stankiewicz0039091).  The Employment Agreement provides that:

> All notices or communications to the medical group shall be delivered or mailed
> to the attention of its *President and its Chief Executive.*

SOF ¶ 16 (emphasis added).  Stankiewicz admitted during her deposition that she understood this

provision required her to seek permission from Dr. Merrick and Kasper in order to rescind or

modify a resignation date.  SOF ¶ 17.  Therefore, Stankiewicz cannot establish apparent

authority, as a matter of law, because DMG informed Stankiewicz that Stankiewicz needed to

seek permission from Dr. Merrick or Kasper for DMG to agree to extend her resignation date.[7]
*See Sphere Drake,* 376 F.3d at 674; *Siena,* 2017 IL App (1st) 151846, at ¶¶ 78-79.

Second, Stankiewicz knew specifically that these alleged agents did not possess authority
to act on behalf of DMG. A plaintiff cannot reasonably conclude that an agent possesses
authority where the plaintiff "knows, or has good reason for believing, that the acts exceed the
agent's powers." *Cove,* 2013 IL App (1st) 120884, at ¶ 27; *Siena,* 2017 IL App (1st) 151846, at
¶¶ 78-79; *Chase,* 744 F.2d at 568-69 ("An appearance of authority that fools no one does not
bind the principal"). Stankiewicz cannot have "reasonably concluded" that Ruggio possessed
authority to extend her resignation date because she knew that Ruggio did not have this
authority. When asked if "anyone from DMG ever told you that Ms. Ruggio had the authority to
extend your employment," Stankiewicz testified that: "*No. I wasn't under the impression that
Sue could extend my employment.*" SOF ¶ 28, Ex. 1-A, p. 161:2-6 (emphasis added).

Similarly, Stankiewicz cannot establish that Bhatia possessed apparent authority because
she admitted that she knew that Bhatia did not have the authority to extend her resignation date
as well. *See* D.E. 74, Ex. A-10, pp. 154:15-155:2 ("Q. So is it your contention that Dr. Bhatia
was the one who gave you permission to stay through August? A. I think that locally in our
office before I would do anything, I would ask him. *But ultimately, I think that it was up to
DMG headquarters* . . . Q. So Dr. Bhatia would not be the ultimate authority in allowing you to
stay? A. Well everything was very local. So ultimate authority? *I guess no . . . no.*") (emphasis

---

[7] Stankiewicz argues that she did not breach the notice provision by failing to seek permission from Dr.
Merrick or Kasper. *See* D.E. 75, p. 17. While she did, her argument misses the point. The notice
provision informed Stankiewicz who she needed to contact if she wished to modify her resignation date.
*See Siena at Old Orchard Condo. Ass'n v. Siena at Old Orchard, LLC,* 2017 IL App (1st) 151846, ¶ 79,
75 N.E.3d 420, 444. Bhatia's forward of Stankiewicz's notice of resignation did not relieve Stankiewicz
from future compliance because the Employment Agreement provides expressly that a waiver of a breach
shall not be "construed as a waiver of any subsequent breach." *See* D.E. 69, Ex. B-2, § 12.10.

8

added).  These admissions are fatal.  *See Siena,* 2017 IL App (1st) 151846, at ¶¶ 80-81.

Moreover, Bhatia's apparent authority is irrelevant because Stankiewicz admitted that she did

not reach an agreement with DMG through Bhatia.  *See* D.E. 69, Ex. 1-A, p. 143:9-21.

Stankiewicz cannot have "reasonably concluded" that either McGuire or Hopkins had

authority to act on behalf of DMG.  She never corresponded with McGuire or Hopkins, there is

no evidence that Ruggio told Stankiewicz that McGuire or Hopkins had taken actions with

respect to her resignation date, and there is no evidence that DMG held out McGuire or Hopkins

as possessing the authority to extend a resignation date. SOF ¶¶ 48, 54-55.

The implausibility of Stankiewicz's position is also demonstrated by the facts that: (a)

Merrick and Kasper interviewed her for employment (PRSOF ¶ 13); (b) she tendered her notice

of resignation to "senior management" (SOF ¶ 29); (c) Ruggio told her to tender her resignation

to Kasper and Merrick (SOF ¶ 30); and (d) every witness testified she needed approval from the

C-Suite.  SOF ¶ 12.  Her admissions to her husband and Hsu (SOF ¶¶ 43-46, 60-61) also show

that Stankiewicz could not have reasonably concluded that these "agents" had authority.[8]

c.    *Stankiewicz Fails to Demonstrate that She Acted Diligently.*

DMG also established that Stankiewicz failed to act diligently in ascertaining the alleged

authority of any putative agents because she did not make any inquiry to determine whether they

possessed the authority to extend her resignation date. D.E. 68, p. 20-21 (citing SOF ¶¶ 45-46,

48, 54-55).  A plaintiff cannot establish apparent authority if the plaintiff acts negligently with

---

[8] The cases that Stankiewicz relies on are also completely distinguishable.  In *Loncarevic,* the evidence demonstrated that the principal gave his bookkeeper "complete authority" with managing the fax campaign at issue.  *See Loncarevic & Assocs. v. Stanley Foam Corp.,* 2017 IL App (1st) 150690, ¶ 37, 72 N.E.3d 798, 808.  In *Lundberg,* the plaintiff produced evidence that the principal approved an advertisement listing the agent as the farm manager and had the manager deal exclusively with the public. *See Lundberg v. Church Farm, Inc.,* 151 Ill. App. 3d 452, 461-62, 502 N.E.2d 806, 813 (2d Dist. 1986). Here, Stankiewicz has not submitted evidence indicating that DMG gave these alleged agents any authority to enter into employment agreements.

respect to the extent of the agent's authority. Rather, she "must use reasonable diligence and prudence to ascertain whether the agent is acting and dealing with [her] within the scope of his powers." *Cove,* 2013 IL App (1st) 120884, at ¶ 27. Stankiewicz cannot satisfy this standard.

Stankiewicz bore the burden of determining *for herself,* "by the exercise of reasonable diligence and prudence, the existence or nonexistence of the agent's authority to act in the premises." *Id.* She failed to do so. Stankiewicz never inquired about the scope of any agent's alleged authority. *See* SOF ¶¶ 45-46, 48, 54-55. For example, while Stankiewicz declares that she "assumed" Bhatia contacted DMG's C-Suite on her behalf, she admitted that she never asked him if there was a process she had follow and she had no idea if Bhatia ever contacted anyone. D.E. 74, Ex. A-10, pp. 154:1-13, 160:3-17. Rather, Stankiewicz admits that her alleged inquiry was limited to relying on statements made by the alleged agent, Ruggio. *See* D.E. 75, p. 16. This is not sufficient. *See Cove,* 2013 IL App (1st) 120884, at ¶ 28 (no apparent authority exists where plaintiff relies on statements of alleged agent).

Stankiewicz also fails to offer any evidence that Ruggio made any statements to Stankiewicz that McGuire, Hopkins, or Bhatia possessed the authority to extend Stankiewicz's employment. *See* D.E. 75, p. 16-17. Rather, the email exchange that Stankiewicz cites refers to the fact that Ruggio worked with Claudia Sagredo to take the administrative steps necessary for Stankiewicz to maintain her credentialing privileges. ASOF, ¶ 20. Thus, Stankiewicz could not have relied on Ruggio for ascertaining the authority of McGuire, Hopkins, or Bhatia. She failed to act diligently in ascertaining the authority of DMG's agents.

> d. *Stankiewicz Cannot Establish Detrimental Reliance.*

Stankiewicz also fails to set forth sufficient evidence to demonstrate that she relied on any third party's representations to her detriment. *See Classic Fire & Marine Ins. Co v. Ill. Ins. Exch.,* 1997 WL 767290, at *6 (N.D. Ill. Dec. 3, 1997); *Landmark,* 2018 WL 2072858, at *8.

The only evidence that Stankiewicz offers is her assertion that she "detrimentally relied on Bhatia and Ruggio's apparent authority because, between July 24 and 27, she personally changed 49 patient treatment plans in reliance of the fact that DMG agreed to extend her employment." D.E. 75, p. 15. However, Stankiewicz fails to explain how the change in 49 patient treatment plans has caused her to suffer a detriment. A "detriment" is a loss or harm suffered in person or property. *Duckett v. Williams,* 86 F. Supp. 3d 268, 274-75 (S.D.N.Y. 2015). She offers no evidence that the alleged change affected those patients' care, that they have complained about the change, or that they sought any recompense due to the change. Thus, she has offered no evidence that she suffered a detriment due to statements made by either Bhatia or Ruggio.[9]

### 3. DMG Never Ratified the Purported Agreement.

Stankiewicz's ratification argument has no merit. Ratification is the affirmance of a prior act done by another whereby the act is given effect as if done by an agent acting with actual authority. *Toney,* 75 F. Supp. 3d at 745. A principal can only ratify the alleged agent's actions "either by not repudiating them or by accepting their benefit." *Amcore Bank,* 326 Ill. App. 3d, at 140. Ratification requires that the principal have full knowledge of the facts and the choice to either accept or reject the benefit of the transaction. *Id.*

In this case, Stankiewicz cannot establish that DMG accepted any benefits of the alleged agreement to extend her resignation date because Stankiewicz admits that she never worked for DMG past July 31, 2017. PRSOF ¶ 62. Since Stankiewicz never performed any work during the alleged extension, DMG did not accept any benefits from the alleged extension.

The record also contains overwhelming evidence that DMG repudiated any alleged agreement to extend Stankiewicz's employment immediately. In determining whether a party

---

[9] Stankiewicz concedes implicitly that she did not detrimentally rely on either McGuire or Hopkins because she has failed to set forth any evidence or argument that she relied on their authority.

repudiates a contract entered into by an alleged agent, the question is whether the repudiation

occurred "within a reasonable time." *Sphere Drake,* 376 F.3d at 677.  In calculating a

"reasonable time," the Seventh Circuit has held that no ratification occurred despite an

approximate six-month delay before repudiation because the party needed to conduct a

reasonable investigation into the actions of the alleged agent.  *See id.* at 678; *see Capital Dist.*

*Physician's Health Plan v. O'Higgins,* 951 F. Supp. 352, 362 (N.D.N.Y. 1997).  Here, DMG

repudiated the alleged agreement to extend Stankiewicz's employment within a reasonable time

because DMG: (a) conducted an immediate investigation; (b) repudiated any agreement almost

immediately after learning about the alleged extension; and (c) repudiated the extension before

the alleged extension took effect.  Specifically, DMG's C-Suite first learned about Stankiewicz's

attempt to extend her employment on the evening of July 25, 2017.  SOF ¶ 56.  DMG's COO

stated the extension was not "doable."  *Id.*  DMG's CEO and President then consulted and

determined they would not extend Stankiewicz's resignation date.  SOF ¶¶ 57-58.  Stankiewicz

learned that DMG would not extend her employment on July 27, 2017 and Kasper informed her

directly on July 29th.  SOF ¶ 59.  DMG repudiated any agreement within a reasonable time.[10]

### 4.    The Statute of Frauds Bars Any Oral Agreement.

The statute of frauds precludes oral contracts that cannot be performed within a year of

their making.  *See* 740 Ill. Comp. Stat. 80/1.  Stankiewicz argues that the alleged oral

modification does not fall within the statute of frauds because the Employment Agreement only

lasts for 364 days.  However, the Employment Agreement provides that "[t]he term of the

Original Agreement is extended from September 1, 2013 through August 31, 2014, and shall

---

[10] Stankiewicz argues that DMG acted negligently by not repudiating the agreement for two days.  Two days is reasonable as a matter of law and certainly reasonable in this case.  DMG's C-Suite was managing a transformational deal for the company.  Given their other obligations, it was reasonable for Kasper and Merrick to take two days to make a decision with respect to Stankiewicz.  *Sphere Drake,* 376 F.3d at 678.

then renew for successive 12 month periods . . . ."  D.E. 74, Ex. B-3, § 1.  Year-to-year contracts

fall within the statute of frauds.  *Briggs v. DiMatio,* 1991 WL 14063, *3 (N.D. Ill. Feb. 1, 1991).

Stankiewicz's argument that the statute of frauds is not applicable because the alleged

oral employment agreement provided for "at-will" employment fares no better.  D.E. 75, p. 24.

If Stankiewicz entered into a separate "at-will" oral employment agreement, DMG possessed the

option and right to terminate the agreement at any time, with or without cause.  Stankiewicz

would have no right to dissent in that scenario.  The statute of fraud applies to any modification

of the Employment Agreement because the Employment Agreement does not provide for "at-

will" employment, it provides for a definite term.  *See* D.E. 74, Ex. B-3, § 1.  The fact the parties

may terminate the Employment Agreement prior to full performance does not remove it from the

statute because the Employment Agreement still cannot be performed within a year.  *See Sinclair*

*v. Sullivan Chevrolet Co.,* 45 Ill. App. 2d 10, 15, 195 N.E. 2d 250, 252 (3d Dist. 1964) ("If we

were to hold termination and performance synonymous, the act would be rendered useless.").

Finally, Stankiewicz argues that other alleged "signed writings" evidenced DMG's intent

to extend Stankiewicz's employment.  "[O]ffered writings must establish a meeting of the minds

as to the basic details of the agreement, which is obviously necessary to constitute a binding

contract" in order to satisfy the statute of frauds.  *Czerska v. United Airlines, Inc.,* 292 F. Supp.

2d 1102, 1119 (N.D. Ill. 2003).  They must contain the material terms of the alleged agreement.

*See id.*  The emails Stankiewicz cites (D.E. 75, p. 25) do not demonstrate a meeting of the minds

between Stankiewicz *and DMG* because Stankiewicz admitted that she knew that Ruggio did not

have authority to enter into a contract on behalf of DMG to extend her employment.  They also

do not contain all of the material terms.  Stankiewicz alleges that the oral agreement modified

her work schedule so that she only had to work three days per week.  *See* D.E. 69, Ex. 1-A, p.

13

143:9-14; Ex. 1-H, pp. 83:23-84:10.  However, the emails do not provide that DMG agreed to a reduction in Stankiewcz's work schedule.  Thus, the alleged oral agreement is unenforceable.

> **B.      DMG Possessed the Ability to Redeem Stankiewicz's Shares Any Time After Stankiewicz Tendered Her Notice of Resignation.**

DMG possessed the ability to redeem Stankiewicz's shares on July 31, 2017, regardless of whether DMG agreed to extend Stankiewicz's employment, because Stankiewicz triggered Section 2(d) of the Shareholder Agreement by making a "decision" to terminate her interest as a shareholder in DMG when she tendered her notice of resignation.  *See* SOF ¶¶ 19-20, 34.

The only argument Stankiewicz offers in response is the conclusory assertion that she "did not decide to terminate her interest in DMG at any time before her termination because, on July 27, she dissented to the Transaction . . . ."  D.E. 75, p. 21.  This argument is a non-sequitur. Stankiewicz admits that she voluntarily tendered her notice of resignation on May 1, 2017.  SOF ¶ 31.  At that time, she took an affirmative act to separate from DMG.  She understood that by resigning from DMG, she would cease to be a shareholder in DMG, because only employees may be shareholders.  SOF ¶ 34; PRSOF ¶ 34.  Therefore, it is indisputable that Stankiewicz made a "decision," at that time, to terminate her interest as a shareholder because she understood that the Shareholder Agreement prohibited her from holding shares in DMG if she was not an employee.  Thus, she triggered Section 2(d) of the Shareholder Agreement and any shares owned by Stankiewicz became redeemable on May 1, 2017.

## II.     The Doctrine of Unclean Hands Bars Stankiewicz's Claim.

The doctrine of unclean hands provides that a party seeking equitable relief cannot take advantage of her own wrong.  *State Bank of Geneva v. Sorenson,* 167 Ill. App. 3d 674, 680, 521 N.E.2d 587, 591 (2d Dist. 1988).  This doctrine should bar Stankiewicz's claim because, after Stankiewicz voluntarily resigned, she initiated a plan to cause DMG to extend her employment,

14

without the knowledge or permission of DMG's Board or C-Suite, to reap a substantial financial gain from the Transaction. *Packers Trading Co. v. CFTC,* 972 F.2d 144, 149 (7th Cir. 1992).

Stankiewicz argues in response that the doctrine is not applicable because it only applies to claims for equitable relief. Her argument fails. Stankiewicz seeks a declaratory judgment regarding her rights under the IBCA. D.E. 1. A claim for declaratory judgment is a claim for equitable relief. *See America's MoneyLine, Inc. v. Coleman,* 360 F.3d 782, 786 (7th Cir. 2004). She also argues that there is a factual dispute regarding the reason why she sought to extend her employment. There is not. She has conceded that she sought to extend her employment to enjoy "the benefits of [the] sale." SOF ¶ 49, Ex. 1-A, pp. 103:2-104:11. Hsu's testimony, and her contemporaneous communications, corroborate her purpose. D.E. 69, Ex. 1-J; Ex. 1-G, p. 89:21-90:13; Ex. 1-K; Ex. 1-A, pp. 196:12-198:15. In fact, Stankiewicz's declaration admits that she sought to extend her resignation date to benefit from the Transaction. *See* D.E. 74, Ex. C, ¶ 34 ("I did not extend my employment *solely to personally benefit from the Transaction.*").[11]

Finally, Stankiewicz argues that she did not act in bad faith because she "did not believe that she had to be employed when the Transaction closed in order to dissent." D.E. 75, p. 23. On the date Stankiewicz sought to cause the extension of her employment, July 24, 2017, she believed that she needed to remain a shareholder through the date of the Transaction in order to dissent. *See* SOF ¶ 43. Her belief did not change until after she spoke to her attorney on July 26th. *See* D.E. 74, Ex. A-10, pp. 172:13-173:24, 187:13-18.

## CONCLUSION

Wherefore, DMG respectfully requests that that Court grant its motion for summary judgment and grant it any other relief the Court deems just.

---

[11] Her communications with Hsu also reveal her intent to conceal her efforts from DMG. SOF ¶ 60.

Dated:  November 12, 2019        Respectfully submitted,

                                        Du Page Medical Group, Ltd.


                                      By:  /s/ *Peter B. Allport*
                                            One of Its Attorneys

Steven S. Scholes (# 6191220)
Peter B. Allport (# 6295762)
Sean Koller (# 6324181)
MᴄDᴇʀᴍᴏᴛᴛ Wɪʟʟ & Eᴍᴇʀʏ LLP
444 W. Lake Street
Suite 4000
Chicago Illinois  60606
Tel: (312) 372-2000
Fax: (312) 984-7700
sscholes@mwe.com
pallport@mwe.com
skoller@mwe.com

16

## <u>CERTIFICATE OF SERVICE</u>

I, Peter B. Allport, hereby certify that on November 12, 2019, I electronically filed the foregoing document with the Clerk of the United States District Court for the Northern District of Illinois by using the CM/ECF system, which will send a notice of electronic filing to the attorneys of record.

/s/ <i>Peter B. Allport</i>

DM_US 163998971-1.103490.0011